UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIPOLITO D.,<br><br>                              Plaintiff,<br>v.<br><br>ANDREW SAUL, Acting Commissioner of Social Security,[1]<br><br>                             Defendant. | Case No.: 18cv1649-WQH(MSB)<br><br>**REPORT AND RECOMMENDATION REGARDING JOINT MOTION FOR JUDICIAL REVIEW [ECF NO. 17]** |

      This Report and Recommendation is submitted to the Honorable William Q. Hayes, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. On July 19, 2018, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of the Social Security Administration. See https://www.ssa.gov/agency/commissioner.html (last visited on July 26, 2019). The Court substitutes Andrew Saul for his predecessor, Nancy A. Berryhill, as the defendant in this action. See Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g) (providing that "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant.").

review of a decision by the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits. (Compl., ECF No. 1.)

Now pending before the Court is the parties' joint motion for judicial review. For the reasons set forth below, the Court **RECOMMENDS** that the Commissioner's decision be **REVERSED** and that Judgment be entered remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I. PROCEDURAL BACKGROUND

On May 28, 2014, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability beginning November 5, 2013. (Certified Admin. R. 146-47, 269-70, ECF No. 11 ("AR").) After his application was denied initially and upon reconsideration, (id. at 180-82, 185-90), Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"), (id. at 195-97). An administrative hearing was held on February 23, 2017. (Id. at 121-45.) Plaintiff appeared at the hearing with counsel, and testimony was taken from him, a medical expert, and a vocational expert ("VE"). (Id.)

As reflected in his June 1, 2017 hearing decision, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 5, 2013 through the date of the decision. (Id. at 24-36.) The ALJ's decision became the final decision of the Commissioner on May 21, 2018, when the Appeals Council denied Plaintiff's request for review. (Id. at 1-9.) This timely civil action followed.

## II. SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. See 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 5, 2013, the alleged onset date. (AR at 26.) At step two, the ALJ found that Plaintiff had the following severe impairment: diabetes mellitus. (Id.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's

2

Listing of Impairments. (Id. at 30.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to "perform medium work as defined in 20 C.F.R. § 404.1567(c) with the following exceptions: the claimant must avoid unprotected heights, climbing ladders and scaffolds and moving machinery." (Id. at 31.)

At step four, the ALJ adduced and accepted the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC was capable of performing his past relevant work as an order filler, as that work was actually performed. (Id. at 34, 139-43.) The ALJ then proceeded to step five of the sequential evaluation process, where he determined that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. Based on the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy, such as packer, cleaner, and checker, the ALJ found that Plaintiff was not disabled. (Id. at 35-36.)

### III. DISPUTED ISSUES

As reflected in the parties' joint motion for judicial review, Plaintiff is raising the following issues as the grounds for reversal and remand:

1. Whether substantial evidence supports the ALJ's decision that Plaintiff can perform his past relevant work as actually performed (J. Mot. Judicial Review 3, ECF No. 17 ("J. Mot.")); and

2. Whether the ALJ's alternate finding that Plaintiff can perform the occupations of packer, cleaner, and checker is supported by substantial evidence and is free of legal error (id.).

### IV. STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g) (West 2018). The scope of judicial review is limited, and the denial of benefits will not be disturbed if

it is supported by substantial evidence in the record and contains no legal error. Id.; Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).

"Substantial evidence means more than a mere scintilla but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001).

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). The reviewing court may enter a "judgment affirming, modifying, or reversing" the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the case to the Social Security Administration for further proceedings. Id.

## V. DISCUSSION

**A.     Whether Substantial Evidence Supports the ALJ's Decision That Plaintiff Can Perform his Past Relevant Work as Actually Performed**

Plaintiff contends that substantial evidence does not support the ALJ's finding that he could perform his past relevant work of an order filler as that work was actually performed. (J. Mot. at 4-7.) Plaintiff asserts that his past relevant work required him to frequently lift 50 pounds, and no evidence in the record supports the ALJ's finding that Plaintiff actually performed the job at the light level of exertion. (Id. at 6-7.) Plaintiff further argues that he does not possess the requisite skills to perform the job as it is generally performed. (Id. at 11-12.) He cites the VE's testimony that Plaintiff performed

his past relevant work at an unskilled level (SVP 2),[2] but the position, as generally performed, was performed at a semi-skilled level (SVP 3).[3] (Id.) Plaintiff further asserts that he illiterate in English and his past relevant work, as generally performed, requires Language Level 2 skills. (Id. at 12.) Plaintiff argues that the ALJ erred at step four of the sequential evaluation process, and the error was not harmless. (Id. at 7, 13.)

The Commissioner concedes that "the ALJ erred in finding that Plaintiff could perform his past relevant work as actually performed," but asserts that the error was harmless because Plaintiff could do the work of an order filler as generally performed. (Id. at 7.) The Commissioner contends that Plaintiff's assessed RFC restricting him to medium work and lifting 50 pounds occasionally, combined with the VE's testimony that a person limited to medium work could perform Plaintiff's past relevant work of an order filler as that job is generally performed, renders any error harmless. (Id. at 7-8.) The Commissioner also argues that Plaintiff's illiteracy is immaterial at step four of the sequential evaluation process because vocational factors are not considered until step five of the process. (Id. at 8-11.)

**1.    Applicable Law**

At step four of the sequential evaluation process, a social security claimant bears the burden of showing that he can no longer perform his or her past relevant work. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." Ocegueda v. Colvin, 630 F. App'x 676, 677 (9th Cir.

---

[2] "Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker setting." DOT, App. C, 1991 WL 688702. An SVP 2 job requires "[a]nything beyond short demonstration up to and including 1 month." Id.

[3] An SVP 3 job requires "[o]ver 1 month up to and including 3 months" of preparation. DOT, App. C, 1991 WL 688702.

2015) (quoting Pinto, 249 F.3d at 844). In order to find that a claimant has the capacity to perform a past relevant work, the ALJ is required to make specific findings of fact, including: (1) a finding of fact as to the claimant's RFC; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation. Id. (citing SSR 82-62, 1982 WL 31386, at *4).

The claimant must be able to perform his or her past relevant work either (1) as the claimant actually performed it or (2) as generally required by employers in the national economy. See Social Security Ruling ("SSR") 82-61, 1982 WL 31387; Pinto, 249 F.3d at 844-45. The claimant is the primary source of information regarding how the claimant's past relevant work was actually performed. See Ocegueda, 630 F. App'x at 677 (citing SSR 82-62, at *3). An ALJ may also rely on the opinion of a VE in evaluating the requirements of a claimant's past relevant work either as actually performed or as generally performed. Id. (quoting 20 C.F.R. § 404.1560(b)(2)) (providing that at step four, a VE's testimony "concerning the physical and mental demands of a claimant's past relevant work either as the claimant actually performed it or as generally performed in the national economy[,] . . . may be helpful in supplementing or evaluating the accuracy of the claimant's descriptions of his past work.").

A reviewing court may not reverse an ALJ's decision because of an error that was harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). An ALJ's error is harmless when it is "inconsequential to the ultimate nondisability determination." See Stout v. Comm'r Soc. Sec. Admin, 454 F.3d 1050, 1055 (9th Cir. 2006).

**2.  Analysis**

Plaintiff stated in his "Work History Report" that his most recent job involved delivering cooking spices to stores. (AR at 319-20.) He lifted boxes filled with spices and carried them from the parking lot to stores five days a week, and frequently lifted "50 lbs or more." (Id. at 320.) Plaintiff also reported that the job required him, among other

6

18cv1649-WQH(MSB)

things, to walk, kneel, and reach for eight hours per day, stand for six hours per day, and sit and climb for two hours per day. (Id.)

At the administrative hearing, Plaintiff testified that he delivered spices to numerous stores along a prescribed route from San Ysidro to Los Angeles. (Id. at 127.) Plaintiff did not drive; another driver picked him up and drove. (Id. at 128-29.) Plaintiff testified that he fulfilled each store's order by unloading boxes with cooking spices from the truck and delivering them inside the store. (Id. at 128.)

The VE categorized Plaintiff's past relevant work as "order filler" (DOT 222.487-014). (Id. at 139.) The VE testified at the administrative hearing that the position is "classified as light and semi-skilled with an SVP of 3, but it appears that, as [Plaintiff] performed it, it was really unskilled. There are a couple of aspects of the job that he did not perform. So I would say, as actually performed, an SVP of 2." (Id. at 139-40.) The VE added that the order filler job, as generally performed, would be classified as "light" work. (See id. at 140.) The VE further stated that the position is "semi-skilled as classified by the DOT, but based on the way [Plaintiff] reported it today, it would be actually performed at the unskilled level." (Id.)

The ALJ determined that Plaintiff has the RFC to "perform medium work as defined in 20 C.F.R. § 404.1567(c) with the following exceptions: the claimant must avoid unprotected heights, climbing ladders and scaffolds and moving machinery." (AR at 31.) The ALJ relied on the VE testimony and reasoned as follows:

> Based on the claimant's documented vocational background, testimony, and earnings records, and on the vocational expert's testimony, the undersigned finds the claimant worked in the occupation listed below within 15 years of the date of his decision, for a sufficient length of time to learn and provide average performance, and at the level of substantial gainful activity, in accordance with SSR 82-62:
>
> [] Order filler, DOT 222.487-014, a light, semiskilled (SVP 3) occupation as generally performed pursuant to the DOT, but actually performed as unskilled (SVP 2) work as described by the claimant.

> In comparing the claimant's residual functional capacity with the physical and mental demands of his past relevant work, and based on the testimony of the vocational expert, the undersigned has determined the claimant is able to perform his past relevant work, as that work was <u>actually performed</u>.

(Id. at 34 (emphasis added, footnotes omitted).)

Because Plaintiff frequently lifted 50 pounds or more when he worked as an order filler, (id. at 320), the position, as Plaintiff actually performed it, required the heavy level of exertion. See 20 C.F.R. § 404.1567(d) ("Heavy work involves lifting no more than 100 pounds at a time with <u>frequent lifting or carrying of objects weighing up to 50 pounds</u>.") (emphasis added). Plaintiff's RFC, however, limited him to medium work, which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." (See AR at 31), see also 20 C.F.R. § 404.1567(d). The Court therefore finds that substantial evidence did not support the ALJ's finding that Plaintiff could perform his past relevant work as it was <u>actually</u> performed.

The Commissioner acknowledges that the ALJ erred in finding that Plaintiff could do his past relevant work as actually performed, but asserts that the error was harmless because Plaintiff could do the job as it is generally performed. (See J. Mot. at 7.) "The best source for how a job is generally performed is usually the Dictionary of Occupational Titles." Pinto, 249 F.3d at 845. According to the DOT, the order filler position, among other things, requires SVP Level 3 and Language Level 2 skills.[4] See DOT

---

[4] Language Level 2 requires the following:

READING: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.
WRITING: Write compound and complex sentences, using cursive style, proper end punctuation[sic], and employing adjectives and adverbs.
SPEAKING: Speak clearly and distinctly with appropriate pauses and emphasis, correct punctuation[sic], variations in word order, using present, perfect, and future tenses.

222.487-014, 1991 WL 672111. As noted above, the VE testified that Plaintiff actually performed the order filler position at an "unskilled" level, whereas the DOT classifies the position as "semi-skilled." (AR at 139-40.) The ALJ questioned the VE about the availability of any "other unskilled positions," and the ALJ's subsequent hypothetical question to the VE specifically restricted a hypothetical individual to unskilled work. (Id. at 141.) As such, the record is devoid of any inquiry or explanation from either the VE or the ALJ with respect to Plaintiff's ability to perform a semi-skilled job.

Further, Plaintiff stated that he did not speak, read, or write in English in his "Adult Disability Report." (Id. at 307.) At the administrative hearing, Plaintiff required the services of an interpreter, Plaintiff's attorney specifically advised the ALJ that Plaintiff did not speak English, and the ALJ acknowledged Plaintiff's language limitation. (Id. at 123.) The ALJ specifically asked Plaintiff if he spoke English in his past relevant work delivering cooking spices, and Plaintiff responded that he "didn't go to school to learn." (Id. at 127.) In his decision, the ALJ stated that Plaintiff "indicated that he did not speak English to his customers for 13 years." (Id. at 31.) The ALJ determined that Plaintiff "is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English." (Id. at 35 (citing 20 C.F.R. § 404.1564).)

As defined in the DOT, the order filler position requires Language Level 2 skills, and Plaintiff's illiteracy in English conflicts with this requirement. Without resolving the question of whether an ALJ is always required to consider a claimant's illiteracy at step four,[5] the Court finds that the ALJ's consistent acknowledgement of Plaintiff's illiteracy

---

DOT 222.487-014, 1991 WL 672111.

[5] The Ninth Circuit has declined to decide whether an ALJ is always required to consider a claimant's language skills, or lack thereof, at step four of the sequential evaluation process. Pinto, 249 F.3d at 847 n.5. The Pinto court stated the following: "A claimant is not *per se* disabled if he or she is illiterate. We merely hold that in order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation." Id. at 847 (citing Johnson v. Shalala, 60 F.3d at 1435).

at step four warranted inquiry into any potential conflicts between the VE's testimony and the DOT. See Pinto, 249 F.3d at 847 (quoting Winfrey v. Chater, 92 F.3d 1017, 1025 (10th Cir. 1996) ("When . . . the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the [vocational expert's] head, we are left with nothing to review."); see also Chaoprasrihomkhao v. Berryhill, Case No.: 1:16–cv–01778–JLT, 2018 WL 287303, at *3-6 (E.D. Cal. Jan. 4, 2018) (finding that an ALJ's inclusion of plaintiff's limited English in a hypothetical question to the VE gave rise to a conflict with the DOT that the ALJ was required to resolve).

The record is not sufficiently developed for the Court to find that other persuasive evidence supports the ALJ's determination at step four, and the ALJ's error is therefore not harmless. See Pinto, 249 F.3d at 847 (finding that remand was warranted, where ALJ found claimant not disabled at step four based "largely" on vocational expert's testimony that conflicted with the DOT, neither ALJ nor VE addressed the deviation, and ALJ otherwise "made very few filings"); cf. Tommasetti, 533 F.3d at 1042 (finding that ALJ erred in finding that claimant could return to past relevant work based on VE' s testimony that deviated from the DOT, where the ALJ "did not identify what aspect of the [VE's] experience warranted deviation from the DOT, and did not point to any evidence in the record other than the [VE's] sparse testimony" to support the deviation; but the error was harmless in light of ALJ's alternative finding at step five, which was supported by substantial evidence, that claimant could perform other work).

**B.** **Whether the ALJ's Alternate Finding That Plaintiff can Perform the Occupations of Packager, Cleaner, and Checker is Supported by Substantial Evidence and is Free of Legal Error**

Plaintiff asserts that the ALJ's alternate finding that Plaintiff can perform the occupations of packer, cleaner, and checker is not supported by substantial evidence. (J. Mot. at 13-16.) Plaintiff argues that he is illiterate and unable to communicate in English, but the ALJ did not include this limitation in his hypotheticals posed to the VE, and the VE's answers therefore have no evidentiary value. (Id. at 13-14.) Plaintiff

10

18cv1649-WQH(MSB)

further contends that occupations of packer, checker and cleaner, as defined in the DOT, require English language skills that he does not possess, and the ALJ did not explain the deviation. (Id. at 14-15.) Plaintiff thus argues that the ALJ erred at step five of the Commissioner's sequential evaluation process. (See id. at 13, 16.) The Commissioner "concedes that the ALJ's alternate Step 5 finding was erroneous," but maintains that because the ALJ found that Plaintiff was not disabled at step four, the ALJ was not required to advance to step five, rendering any error at step five "immaterial." (Id. at 16.)

### 1. Applicable Law

At step five of the sequential evaluation process, the ALJ is required to determine whether a claimant can perform any other work existing in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work experience. See 20 C.F.R. § 404.1520(g). The ALJ may rely on the testimony of a VE to assist in this determination, but the ALJ is required to pose a hypothetical question that includes all of claimant's limitations that are supported by substantial evidence in the record. See Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993). If the ALJ's hypothetical to the VE does not incorporate all of a claimant's limitations or is not supported by substantial evidence in the record, the VE's testimony has no evidentiary value. Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The VE's testimony should generally be consistent with the DOT. See SSR 00-4P, 2000 WL 1898704, at *2. If there is a conflict between the VE's testimony and the DOT, the ALJ is required to inquire into and resolve the conflict before relying on the VE's testimony to find that a claimant can perform other work. See id.

The pertinent regulations define "illiteracy" as "the inability to read or write." See 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1). "[S]omeone [is] illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." Id. A "[claimant] is illiterate or unable to communicate in English if he is either illiterate in English or unable to communicate in

English or both." Silveira v. Apfel, 204 F.3d 1257, 1261 (9th Cir. 2000) (footnote and internal quotation marks omitted); see also Pinto, 249 F.3d at 844 n.2 (noting that the most persuasive reading of the DOT is that the language requirements refer to English literacy). The Commissioner bears the burden of establishing that claimant is literate in English. See Silveira, 204 F.3d at 1261.

### 2. Analysis

At the administrative hearing, the ALJ posed a hypothetical question asking the VE to do the following:

> [A]ssume a hypothetical individual is – diabetes, peripheral neuropathy and his diabetic condition limits him from carrying 25 pounds occasionally – I'm sorry – 50 pounds occasionally and 25 pounds frequently; that he could sit, walk, and stand six out of eight-hour work day. He should avoid ladders and scaffolds and concentration – exposures to moving machinery and working at unprotected heights – no unprotected heights, no exposure to moving machinery.

(AR at 140.) The ALJ added that he was referring to "hazardous" moving machinery. (Id. at 140-41.) The ALJ then asked, "[c]ould this individual return to past work," and the VE responded, "Yes, your Honor. Given that hypothetical, they would." (Id. at 141.) The VE also stated that a hypothetical individual described above would be able to perform the following unskilled jobs: packer (DOT 579.685-038), cleaner (DOT 381.687-018), and checker (DOT 369.687-014). (Id.)

The ALJ then posed one more hypothetical question:

> Assume, in addition to the exertional limitations, he also has non-exertional medical problems, referred to as depression, anxiety, and headaches. And, consequently, due to his cognitive impairment, have resulted in mental problems, he would be limited to, again, unskilled work and also limited public contact. So I assume those past jobs were unskilled. So I'm now limiting his residual functional capacity to reduce it to unskilled and limited public contact.

(Id. at 141-42.) The VE opined that the hypothetical individual would still be able to perform the jobs of packer, cleaner, and checker. (Id. at 142.)

With regard to the VE's testimony at step five, the ALJ stated the following:

> [T]he Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as:
>
> 1. Packer, DOT 579.685-038, a medium, unskilled (SVP 2) occupation, with 40,000 such jobs in the national economy; and
>
> 2. Cleaner, DOT 381.687-018, a medium, unskilled (SVP 2) occupation, with 15,000 such jobs in the national economy; and
>
> 3. Checker, DOT 369.687-014, a medium, unskilled (SVP 2) occupation, with 132,000 such jobs in the national economy.
>
> The vocational expert indicated her testimony was consistent with the Dictionary of Occupational Tiles and with her training, education and experience in the field and the undersigned accepts her testimony pursuant to SSR 00-4p.

(Id. at 35-36.) The ALJ further stated that "[b]ased on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (Id. at 36.)

Although the ALJ determined that Plaintiff "is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English," the ALJ did not incorporate this limitation into any of the hypotheticals that he posed to the VE, and relied on the VE's testimony to find that Plaintiff could work as a packer, cleaner, or checker. (See id. at 35-36.) According to the DOT, the jobs of packer (DOT 579.685-038)

and checker (DOT 369.687-014) require Language Level 1 skills,[6] and the job of cleaner (DOT 381.687-018) requires Language Level 2 skills.[7] See DOT 579.685-038, 1991 WL 684143; DOT 369.687-014, 1991 WL 673071; DOT 381.687-018, 1991 WL 673258. "[I]n order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation." Pinto, 249 F.3d at 847 (citing Johnson, 60 F.3d at 1435)). In this case, despite the DOT's language requirements for packer, checker, and cleaner positions, neither the VE nor the ALJ addressed the impact of Plaintiff's illiteracy in English on his ability to find and perform those jobs. In light of Plaintiff's assessed illiteracy, his capabilities appear to be inconsistent with the DOT language requirements for the three occupations identified by the VE, and this deviation was not "definitively explain[ed]." See id.

Because the ALJ failed to present a complete hypothetical to the VE, and neither the VE nor the ALJ explained the potential deviation from the DOT, the VE's testimony, which the ALJ adopted, could not serve as substantial evidence supporting the ALJ's decision. See id.; see also Matthews, 10 F.3d at 681 (stating that the ALJ is required to pose a hypothetical question that includes all of claimant's limitations that are supported by substantial evidence in the record in order to rely on VE's testimony);

---

[6] The DOT defines Language Level 1 as follows:

> READING: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.
> WRITING: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.
> SPEAKING: Speak simple sentences, using normal word order, and present and past tenses.

DOT 579.685-038, 1991 WL 684143; DOT 369.687-014, 1991 WL 673071.

[7] See DOT 381.687-018, 1991 WL 673258; see also supra note 4.

Gallant, 753 F.2d at 1456 (finding that the VE's testimony had no evidentiary value, where the ALJ's hypothetical to the VE did not incorporate all of claimant's limitations); Guillen v. Colvin, No. ED CV 14–1371–PLA, 2015 WL 2227845, at *6 (C.D. Cal. May 12, 2015) ("[T]he VE's testimony could not serve as substantial evidence supporting the ALJ's determination and it was error for the ALJ to rely on the VE's testimony in finding that plaintiff, in light of his assessed illiteracy in English, can perform the jobs [identified by the VE]."). Accordingly, based on the record before it, the Court cannot determine whether the ALJ's alternative finding at step five of the sequential evaluation process that Plaintiff could find other work existing in significant numbers in the national economy is supported by substantial evidence. See Agundes v. Berryhill, Case No.: 16-cv-1505-BEN-AGS, 2017 WL 3478770, at *2 (S.D. Cal. Aug. 14, 2017) (recommending that the case be remanded "so the ALJ can make specific findings on [plaintiff's] language capabilities and the impact they have on [the plaintiff's] ability to work."), report and recommendation adopted, 2017 WL 3789822, at *1 (S.D. Cal. Aug. 29, 2017); Lor v. Berryhill, No. 2:15-cv-1478 DB, 2017 WL 915332, at *3-4 (E.D. Cal. Mar. 8, 2017) (reversing ALJ's decision for failing to inquire into a conflict between plaintiff's illiteracy and VE's testimony that plaintiff could perform jobs with Language Level 1 requirements); Guillen, 2015 WL 2227845, at *3, *6-7 (remanding, where the ALJ determined that plaintiff was "not able to communicate in English, and [was] considered in the same way as an individual who is illiterate in English[,]" but failed to incorporate this limitation into a hypothetical question posed to the VE, and neither the VE nor the ALJ explained the potential deviation from the DOT).

## VI. CONCLUSION AND RECOMMENDATION

The decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. See Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981). Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the

decision. See Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984); Lewin, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits to which the disabled Plaintiff is entitled, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

Here, Plaintiff "seeks an order from the Court reversing the final decision and remanding for further proceedings," (J. Mot. at 16), and the Commissioner argues that the Court should affirm the ALJ's decision finding Plaintiff not disabled, (id. at 17). The Court concludes that remand for further proceedings is warranted because additional administrative proceedings could remedy the defects in the ALJ's decision.

For the foregoing reasons, this Court **RECOMMENDS** that the Commissioner's decision be **REVERSED**, and that Judgment be entered remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS ORDERED** that no later than **August 14, 2019**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 21, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: August 1, 2019

Honorable Michael S. Berg
United States Magistrate Judge